James M. DAVIES and Judith A. Davies, Plaintiffs-Appellees,

v.

Bobby L. BRADLEY and Mary Lee Bradley, Defendants-Appellants,

and

Pat Taylor, Valley Realty, Mary Jane Hopkinson, and Mason & Morse, Inc., Defendants.

No. 81CA0993.

Colorado Court of Appeals, Div. II.

Dec. 22, 1983.

Sachs, Klein & Seigle, Jon David Seigle, James H. Delman, Aspen, for plaintiffs-appellees.

Carter & Sands, P.C., Stephen L. Carter, Rifle, for defendants-appellants.

KELLY, Judge.

This case involves the sale of a house built and sold by defendants Bobby and Mary Lee Bradley to the plaintiffs, James and Judith Davies. Citing the existence of eleven defects, including the failure to obtain a certificate of occupancy, all in violation of the county building code, the trial court found that the house was unsuitable for habitation and ruled that the Bradleys had breached the implied warranty of habitability.

The Bradleys appeal, arguing (1) that they were under no duty to disclose the presence of the defects, (2) that the plaintiffs waived the implied warranty of habitability by agreeing to buy the house "as is," (3) that the implied warranty of habitability is inapplicable here since the builder was not truly a "builder-vendor," and (4) that the trial court improperly awarded plaintiffs their attorney's fees under the guise of punitive damages. We affirm.

The Bradleys worked full time on the construction of the house for almost a year. It was the third house which they had built and lived in, and subsequently sold. When the house was put on the market, it appeared to be complete with the exception of a partially completed deck on the exterior of the house. The Bradleys obtained a building permit prior to construction of the house, but did not obtain a certificate of occupancy. The Bradleys performed substantially all the work on the residence themselves.

The plaintiffs submitted an offer to purchase the house which was accepted by the Bradleys, who added a clause to the standard form contract stating that "the buyers agree to accept said property as-is with the exception of the deck which will be completed by (illegible) 1978." The plaintiffs agreed to the inclusion of this clause. The trial court found that the purpose of this clause was to relieve the Bradleys of the obligation of performing further work on the house except as specified in the contract. The court further found that the parties did not intend for the clause to waiver or limit any implied or express warranties of workmanlike construction or habitability.

After closing, the plaintiffs took possession of the house and discovered it to be in violation of the Uniform Building Code of Pitkin County. An inspection revealed eleven distinct defects in quality and workmanship rendering the house unsuitable for habitation. The trial court found that the plaintiffs had no knowledge of the defects at the time of the closing, and that the Bradleys knew or should have known of their obligation to obtain periodic building inspections and a certificate of occupancy under the Uniform Building Code.

The trial court held that the Bradleys' failure to disclose that no such inspections or certificate had been obtained was done willfully and with a wanton and reckless disregard for the rights and interests of the plaintiffs. Therefore, the court awarded the plaintiffs the actual costs of making the house habitable and bringing it into compliance with the county's building code, and exemplary damages in an amount equal to the legal fees incurred by the plaintiffs because of the Bradleys' willful and wanton failure to disclose.

I.

■ The Bradleys were obligated, as builder-vendors, to build the house in a workmanlike manner and sell it in a habitable condition in compliance with the applicable building codes. This obligation arose under the implied warranty of habitability imposed upon builder-vendors and first recognized in Colorado in *Carpenter v. Donohoe*, 154 Colo. 78, 388 P.2d 399 (1964). *See Sloat v. Matheny*, 625 P.2d 1031 (Colo. 1981); *Duncan v. Schuster-Graham Homes*, 194 Colo. 441, 578 P.2d 637 (1978); *see also Dann v. Perrotti & Hauptman*

*Development Co.,* 670 P.2d 448 (Colo.App. 1983).

The Bradleys argue that they were under no obligation to disclose the existence of structural defects in the house because a reasonable examination of the premises would have made the plaintiffs aware of the defects. We disagree.

It is not necessary to consider the discoverability of defects through inspection in order to establish a builder-vendor's liability under an implied warranty of habitability. In *Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983), an implied warranty of habitability was likened to strict liability for construction defects, and it was stated that "[p]roof of a defect due to improper construction, design, or preparation is sufficient to establish liability in the builder-vendor." Further, the Bradleys' willful concealment of the presence of the defects obviated any requirement that the plaintiffs inspect the house for obvious defects. Where such concealment has occurred, it is required only that the buyer be ignorant of the existence of the facts concealed. *Carpenter v. Donohoe, supra.* The trial court so found, and this finding is supported by the record.

## II.

The Bradleys contend that the "as is" clause in the contract, agreed to by the plaintiffs, effected a waiver of the implied warranty of habitability. We disagree.

In order for a builder-vendor of a new home to limit the implied warranty of workmanlike construction and habitability, the contract must contain an express provision to that effect, and the limitation must be accomplished by "clear and unambiguous language." *Sloat v. Matheny, supra; Dann v. Perrotti & Hauptman Development Co., supra.* Further, any such limitation will be strictly construed against the builder-vendor. *Sloat v. Matheny, supra; Belt v. Spencer,* 41 Colo.App. 227, 585 P.2d 922 (1978).

Although the plaintiffs were aware of the presence of the "as is" clause in the contract, there was no agreement as to its meaning. The trial court found that the clause did not limit the implied warranties of workmanlike construction and habitability in any respect since the plaintiffs intended only that the Bradleys would be relieved of any obligation to perform further work on the house, not that the Bradleys would be relieved of their obligation to have performed already completed work in conformance with the building code. These findings also are supported by the record, and the trial court correctly ruled that no waiver was accomplished.

## III.

There is no merit to the Bradleys' contention that since they were relatively inexperienced builders and since the plaintiffs were not aware that the Bradleys had built the house, the laws pertaining to builder-vendors should not be applied to them. Builder-vendor status is appropriate where the seller " 'either built, or participated in the building of, or supervised the building of, the property.' " *Mazurek v. Nielsen,* 42 Colo.App. 386, 599 P.2d 269 (1979); *see Sloat v. Matheny, supra; Carpenter v. Donohoe, supra.*

Here, the house was the third such house built by the Bradleys and sold to a member of the general public. As this court noted in *Mazurek v. Nielson, supra:* "Even a first time builder-seller may be 'in the business of building' for purposes of impliedly warranting his work." The trial court found that the Bradleys were builder-vendors, and the record supports that finding.

That the plaintiffs may not have been aware of the fact that the Bradleys had built the house is of no consequence. The policy imperatives enunciated in *Sloat v. Matheny, supra,* namely, the protection of unsophisticated buyers and the deterrence of building of uninhabitable dwellings, are dispositive of this argument.

### IV.

The Bradleys argue that the trial court erred in awarding exemplary damages and that in measuring exemplary damages by the attorney's fees and costs associated with plaintiffs' prosecution of the lawsuit, the trial court effectively awarded attorney's fees in the absence of statutory authority to do so. We disagree.

██ Exemplary damages are not ordinarily a proper remedy in breach of contract cases. *Williams v. Speedster, Inc.,* 175 Colo. 73, 485 P.2d 728 (1971); *Sams v. Curfman,* 111 Colo. 124, 137 P.2d 1017 (1943). This is because the allegations in an action for breach of contract do not ordinarily bring the case within the confines of the statute. *See* § 13–21–102, C.R.S.1973. Where, however, as here, the facts alleged and proved establish willful and wanton conduct and reckless disregard for the rights of the plaintiff, the maleficent intent on which exemplary damage awards in tort are based is present, and exemplary damages may be awarded though the action sounds in contract. The punitive and deterrent purposes of the statute authorizing exemplary damages in civil cases are thereby effected.

██ In determining an appropriate award of exemplary damages, the trial court is permitted to consider the plaintiffs' expenses in prosecuting the action. *See Beebe v. Pierce,* 185 Colo. 34, 521 P.2d 1263 (1974). Under the circumstances in this case the trial court properly considered plaintiffs' attorney's fees and costs in arriving at an award of exemplary damages.

The judgment is affirmed.

SMITH and VAN CISE, JJ., concur.